UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MATTHEW D. HUGHES,

                       Plaintiff,

             v.

ANDREW M. SAUL,[1] Commissioner of
  Social Security,

                       Defendant.

**DECISION
and
ORDER**

**18-CV-559F**
(**consent**)

_____

APPEARANCES:           LAW OFFICES OF KENNETH R. HILLER, PLLC
                               Attorneys for Plaintiff
                               KENNETH R. HILLER, and
                               CORRINE MARIE MANFREDI, of Counsel
                               6000 North Bailey Avenue, Suite 1A
                               Amherst, New York 14226

                               JAMES P. KENNEDY, JR.
                               UNITED STATES ATTORNEY
                               Attorney for Defendant
                               Federal Centre
                               138 Delaware Avenue
                               Buffalo, New York 14202
                                       and
                               GRAHAM MORRISON, and
                               JILLIAN ERIN NELSON
                               Special Assistant United States Attorneys, of Counsel
                               Social Security Administration
                               Office of General Counsel
                               26 Federal Plaza – Room 3904
                               New York, New York 10278
                                       and
                               AMY ELIZABETH HAWKINS MORELLI
                               Special Assistant United States Attorney, of Counsel
                               Social Security Administration
                               Office of General Counsel
                               61 Forsyth Street, S.W., Suite 20T45
                               Atlanta, Georgia 30303

---

[1] Andrew M. Saul became the Commissioner of the Social Security Administration on June 17, 2019, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case. No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

## JURISDICTION

On October 7, 2019, the parties to this action, consented pursuant to 28 U.S.C. § 636(c) to proceed before the undersigned. (Dkt. 11). The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on May 6, 2019, (Dkt. 7), and by Defendant on July 3, 2019 (Dkt. 9).

## BACKGROUND

Plaintiff Matthew D. Hughes ("Plaintiff"), brings this action under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's application filed with the Social Security Administration ("SSA"), on March 11, 2016, for Social Security Disability Insurance benefits under Title II of the Act ("SSDI" or "disability benefits"). Plaintiff alleges he became disabled on July 22, 2015, based on bilateral knees injury sustained in the military in 2004, pain with bending, chronic pain, sinus issues since breaking his nose in 2008 resulting in difficulty breathing, migraines and severe blinding headaches since 2006, chronic pain and muscle spasms in his back since 2005, partial paralysis of his diaphragm, improperly functioning right lung, chronic obstructive pulmonary disorder ("COPD"), arthritis since 2005, joint pain and swelling, post-traumatic stress disorder ("PTSD"), nightmares, depression, and an autoimmune disease since 2010 causing extreme fatigue. AR at 214. AR[2] at 214. Plaintiff's application initially was denied on June 10, 2016, AR at 92-103, and at Plaintiff's timely

---

[2] References to "AR" are to page of the Administrative Record electronically filed by Defendant in nine parts on March 7, 2019 (Dkts. 5 through 5-9).

request, on May 17, 2018, a hearing was held in Jamestown, New York, via video conference before administrative law judge Eric Eklund ("the ALJ), located in Lawrence, Massachusetts.  AR at 50-91.  Appearing and testifying at the hearing were Plaintiff, represented by Nicholas DiVirglio, Esq., and vocational expert ("V.E.") Estelle Hutchinson.

On June 20, 2018, the ALJ issued a decision denying Plaintiff's claim, AR at 12-35 ("the ALJ's decision"), which Plaintiff timely appealed to the Appeals Council.  AR at 178-79.  On August 16, 2018, the Appeals Council issued a decision denying Plaintiff's request for review, rendering the ALJ's decision the Commissioner's final decision.  AR at 1-6.  On October 15, 2018, Plaintiff commenced the instant action seeking judicial review of the ALJ's decision.

On May 6, 2019, Plaintiff moved for judgment on the pleadings (Dkt. 7) ("Plaintiffs' Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. 7-1) ("Plaintiff's Memorandum").  On July 3, 2019, Defendant moved for judgment on the pleadings (Dkt. 9) ("Defendant's Motion"), attaching the Commissioner's Brief in Support of the Commissioner's Motion for Judgment on the Pleadings and in Response to Plaintiff's Brief Pursuant to Local Civil Rule 5.5 (Dkt. 9-1) ("Defendant's Memorandum").  Filed on July 24, 2019, was Plaintiff's Response to the Commissioner's Brief in Support and in Further Support for Plaintiff's Motion for Judgment on the Pleadings (Dkt. 10) ("Plaintiff's Reply").  Oral argument was deemed unnecessary.

Based on the foregoing, Plaintiff's Motion is DENIED; Defendant's Motion is GRANTED.

**FACTS**[3]

Plaintiff Matthew D. Hughes ("Plaintiff" or "Hughes"), born May 23, 1981, was 34 years old as of July 22, 2015, his alleged disability onset date ("DOD"), and 37 years old as of June 20, 2018, the date of the ALJ's decision. AR at 31, 96, 180, 210. Plaintiff is single, has four young children, and lives in the basement of his mother's house in Silver Creek, New York. AR at 69, 230-31. Plaintiff has a driver's license and drives every other day. AR at 55. Plaintiff graduated high school where he attended regular classes, and was certified as an Emergency Medical Technician ("EMT"), in the military. Plaintiff's work experience includes construction worker, an infantry unit leader in the United States Marine Corps. ("Marines"), and an EMT with the United States Air Force ("Air Force"). AR at 29-30, 56, 215, 246-49. Plaintiff was honorably discharged from both military branches. AR at 56. As a military veteran, since 2008, Plaintiff has received much of his medical care through the Department of Veterans Affairs ("VA") Medical Center in Buffalo, New York ("Buffalo VAMC"), including at Buffalo, as well as at satellite locations in Jamestown and Dunkirk.

Among Plaintiff's multiple impairments is idiopathic right phrenic nerve paralysis (loss of muscle power in the diaphragm caused by injury to the phrenic nerve), AR at 587, for which Plaintiff, on September 19, 2016, underwent at the Buffalo VAMC a video-assisted thoracoscopic (VATS) diaphragm plication ("plication procedure") (minimally invasive procedure intended to provide the affected lung with greater volume for expansion). AR at 587. Although the plication procedure was considered successful, on December 12, 2016, Plaintiff was found to have a 90% service-

---

[3] In the interest of judicial economy, recitation of the Facts is limited to only those necessary for determining the pending motions for judgment on the pleadings.

connected disability based on PTSD, unilateral diaphragmatic paralysis (breathing problems), lumbar strain, bilateral knee strain, and awarded VA Individual Unemployability ("IU") benefits. AR at 182-90. In connection with his IU benefits, two disability questionnaires were completed by VA medical sources, including on June 18, 2015, by physician assistant ("P.A.") Michael Rudzinski ("P.A. Rudzinski"), AR at 310-14, and on June 20, 2015 by psychologist Sandra Jensen, Ph.D. ("Dr. Jensen"), later supplemented on September 28, 2015. AR at 293-309. In connection with his disability benefits application, on May 6, 2016, Plaintiff underwent a consultative psychiatric evaluation by psychologist Janine Ippolito, Ph.D. ("Dr. Ippolito"), AR at 441-46, an internal medicine examination by John Schwab, D.O. ("Dr. Schwab"), AR at 447-53, and a medical consultative assessment by G. McCormack, M.D. ("Dr. McCormack"). AR at 1209-17.

## DISCUSSION

**1.    Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A). A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error. 42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). In

reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence. *Id.* "Congress has instructed . . . that the factual findings of the Secretary,[4] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d60, 62 (2d Cir. 1982).

**2. Disability Determination**

The definition of "disabled" is the same for purposes of receiving SSDI and SSI benefits. *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a). The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920. *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982). If the claimant meets the criteria at any of the five steps, the inquiry ceases and the claimant is not eligible for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920. The first step is to determine whether the applicant is engaged in substantial gainful

---

[4] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

activity during the period for which the benefits are claimed.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  The second step is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement of at least 12 continuous months, there is a presumption of inability to perform substantial gainful activity, and the claimant is deemed disabled, regardless of age, education, or work experience.  42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d).  As a fourth step, however, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" or "RFC" which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20 C.F.R. 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW").  20 C.F.R. §§ 404.1520(e) and 416.920(e).  If the applicant remains capable of performing PRW, disability benefits will be denied, *id.*, but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy."  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c).  The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the

burden of proof on the final step. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).

In the instant case, the ALJ found Plaintiff met the insured status requirements for SSDI through December 31, 2019, AR at 17, has not engaged in substantial gainful activity since July 22, 2015, his alleged DOD, AR at 17, and suffers from the severe impairments of depression, anxiety, attention-deficit hyperactivity disorder, PTSD, adjustment disorder, phrenic nerve disorder, status post-robotic assisted thoracoscopic plication of right diaphragm, low back pain due to minimal spondylosis of the lumbar spine, bilateral knee strains, linear fibromas of the right lung, lower lobe, COPD, mild disc bulge at the C5-C7 levels of the cervical spine, but that Plaintiff's other impairments, including migraines, chronic maxillary sinusitis, abscesses of the right elbow and right axilla, and a history of cocaine, opioid, and alcohol abuse did not have more than a minimal impact on Plaintiff's ability to perform basic work activities and thus are, by definition, not severe. AR at 17-18. The ALJ further determined that Plaintiff does not have an impairment or combination of impairments meeting or medically equal to the severity of any listed impairment in Appendix 1, AR at 18-21, and that Plaintiff retains the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), with limitations including he may only frequently climb ramps, stairs, ladders, ropes, or scaffolds, frequently crawl, balance, stoop, crouch, or kneel, he needs to avoid extreme cold, extreme heat, wetness, humidity, concentrated fumes, odors, dust, gases, poorly ventilated areas, concentrated chemicals, moving machinery, and unprotected heights, and is limited to simple, unskilled work, in a low-stress job defined as only occasional decision-making, only occasional changes in the work setting, and only occasional

interaction with the public, co-workers, and supervision. AR at 21-29. The ALJ further found Plaintiff unable to perform any PRW, AR at 29-30, and in light of Plaintiff's age, education, work experience, lack of transferability of skills, and RFC, application of the Medical-Vocational Rules supports a determination that Plaintiff is not disabled, with jobs existing in significant numbers in the national economy that Plaintiff can perform, including bench assembler, hand packager, and inspector, all three jobs qualifying as light, unskilled work, AR at 30-31, such that Plaintiff is not disabled as defined under the Act. *Id.* at 31.

Plaintiff does not contest the ALJ's findings with regard to the first three steps of the five-step analysis, but argues the ALJ's determination of Plaintiff's RFC at the fourth step is not supported by substantial evidence in the record because the ALJ failed to discuss the VA disability and IU benefits ratings, Plaintiff's Memorandum at 20-24, and the ALJ's sole reason for rejecting medical opinions rendered by VA medical sources, especially those of Dr. Jensen and P.A. Rudzinski, *i.e.*, characterizing such opinions as "vague" without any explanation, constitutes nothing more than a gross mischaracterization of the record requiring remand. *Id.* at 24-27. Defendant argues the ALJ properly evaluated and gave little weight to the decisions of the VA, which is a separate government agency than the SSA, Defendant's Memorandum at 10-12, and the ALJ properly considered the medical statements of Dr. Jensen and P.A. Rudzinski. *Id.* at 12-19. In reply, Plaintiff again argues the ALJ mischaracterized all VA opinions of record without explanation. Plaintiff's Reply at 1-3. Plaintiff's arguments are without merit because substantial evidence supports the ALJ's decision.

Preliminarily, insofar as Plaintiff relies on the VA determination that Plaintiff was entitled to IU benefits because of a service-connected disability, such determination is not binding on the Commissioner. *See Atwater v. Astrue*, 512 Fed.Appx. 67, 70 (2d Cir. 2013) ("A determination made by another agency [the VA] regarding a claimant's disability is not binding on the Social Security Administration." (citing 20 C.F.R. § 404.1504)). This is so because unlike the Commissioner's determination of disability, which is neutral, see *Kitt v. Comm'r of Soc. Sec.*, 2015 WL 4199281, at * 2 (E.D.N.Y. July 13, 2015 ("an ALJ has no interest in denying benefits and is to serve as a neutral fact-finder, not an 'advocate with a predetermined mind destined to reach a predetermined result.'" (quoting *Fulwood v. Heckler*, 594 F.Supp. 540, 547 (D.D.C. 1984)), the VA's determination is pro-claimant. *See Hodge v. West*, 155 F.3d 1356, 1362 (Fed.Cir. 1998) ("This court and the Supreme Court both have long recognized that the character of the veterans' benefits statutes is strongly and uniquely pro-claimant." (citing cases)). The Second Circuit nevertheless directs that a VA's IU disability determination "'is entitled to some weight and should be considered.'" *Atwater*, 512 Fed.Appx. at 70 (quoting *Hankerson v. Harris*, 636 F.2d 893, 897 (2d Cir. 1980)). In the instant case, contrary to Plaintiff's argument, the ALJ did consider the VA's decision awarded Plaintiff IU benefits, but found the decision was not supported by the record before the ALJ and, thus, gave the VA's decision little weight, particularly because subsequent VA records and SSA consultative examinations and opinions showed significant improvement in Plaintiff's physical and mental conditions and supported the ALJ's RFC assessment. AR at 183-88.

In particular, with regard to the mental health disability benefits questionnaire completed on June 20, 2015, Dr. Jensen opined Plaintiff's symptoms were consistent with a diagnosis of PTSD in the mild to moderate range, causing moderate social impairment, loss of interest in activities, and moderate occupational impairment, AR at 310, only to opine on September 28, 2015, that Plaintiff's symptoms had worsened and were consistent with severe PTSD. AR at 296-99. Yet, as the ALJ observed, subsequent behavioral health progress notes from Buffalo VAMC showed Plaintiff's mental health significantly improved. AR at 25 (citing to numerous Buffalo VAMC behavioral health progress notes). For example, the ALJ specifically observed that as of May 2, 2016, Plaintiff's behavioral health specialist had not seen Plaintiff in a year, AR at 25 (citing AR at 912). Plaintiff further reported he obtained treatment for his mental health from his VA primary care provider who provided Plaintiff with medication for his depression which Plaintiff reported "helps a lot." *Id.* On December 1, 2017, Plaintiff reported he had "got away from bad friends and a toxic environment with his [significant other]," and was staying with friends and family. *Id.* (quoting AR at 138-39). Accordingly, the ALJ considered the VA's records and gave reasons for discounting them other than merely declaring the records "vague" as Plaintiff maintains.

Further, the ALJ's assessment of Plaintiff's mental impairment is supported by substantial evidence in the record, including the Dr. Ippolito's consultative opinion of May 6, 2016, to which the ALJ afforded great weight after thoroughly discussing it. AR at 25 and 26-27 (citing AR at 441-46). Significantly, although the ALJ concurred with Dr. Ippolito's assessment of Plaintiff's ability to interact with others, to understand, remember, or apply information, and to concentrate, persist, and maintain pace, the

ALJ, contrary to Dr. Ippolito, found Plaintiff not severely but only moderately limited in his ability to appropriately deal with stress. *Id.* The ALJ further determined Plaintiff was overall more limited than Dr. Ippolito opined with regard to Plaintiff's psychiatric impairments, with the ALJ finding such impairments interfere with Plaintiff's ability to function on a daily basis and thus, are by definition severe, yet Dr. Ippolito found the same psychiatric impairments not significant enough to interfere with Plaintiff's ability to function on a daily basis. AR at 26-27 (citing AR at 441-46).

The ALJ further considered the opinion of State agency psychological consultant A. Dipeolu, Ph.D. ("Dr. Dipeolu"), who examined Plaintiff on June 3, 2016, in connection with his disability benefits application. AR at 28 (citing AR at 92-103). Dr. Dipeolu diagnosed Plaintiff with PTSD with panic attacks, and adjustment disorder with depressed mood, and opined Plaintiff's psychiatric impairments posed moderate limitations to his mental RFC and that Plaintiff should be able to function in minimum contact and less stressful environment. AR at 97. The ALJ assigned the opinion "some weight" insofar as it was consistent with other evidence in the record showing Plaintiff with moderate limitations in his ability to interact with others. AR at 28 (citing AR at 92-103). Such other evidence included treatment notes for the Buffalo VAMC showing Plaintiff with positive mental status examination findings including depressed mood, anxious mood, sad mood, guarded affect, worrisome affect, down affect, difficulties staying on track, hesitating and stumbling speech, quiet speech, and poor eye contact, but also demonstrating good mental status examination results including well-groomed appearance, good hygiene, pleasant attitude, cooperative attitude, good eye contact, fluent speech, normal speech, euthymic (stable) mood, non-labile affect, well-related

affect, logical thought process, grossly intact cognition, grossly intact insight/judgment, normal thought process, full affect, and lack of suicidal ideation, homicidal ideation, or psychotic symptoms.  AR at 24 (citing AR at 299, 308, 377, 421, 721, 912, 1000, 1009, 1016, 1030, 1032, and 1050).  These records on which the ALJ relies are substantial evidence supporting the ALJ's conclusion that Plaintiff's mental health improved with treatment, even despite gaps in such treatment.  AR at 28.

Substantial evidence in the record also supports the ALJ's determination of Plaintiff's physical RFC.  The ALJ discounted the November 9, 2015 opinion of P.A. Rudzinski, who assessed Plaintiff with the "ability to function in an occupational setting at a sedentary job sitting 45-60 minutes at a time moving arms at desk level moving papers/answering phones; then repositioning himself after 45-60 minutes sitting."  AR at 71-72.  The ALJ gave little weight to the opinion because it was "vague" and rendered according to VA, rather than SSA, standards.  AR at 28.  The ALJ cited other medical evidence in the record showing Plaintiff capable of more than sedentary work, including numerous medical examinations showing good musculoskeletal examinations results, and that Plaintiff did not require ongoing or extensive treatment with an orthopedist, neurologist, or pain specialist.  AR at 28.  This determination is supported by substantial evidence in the record.  For example, at a June 18, 2015 Compensation and Pension examination, P.A. Rudzinski reported Plaintiff was able to perform repetitive use testing of both his right and left knees without additional loss of motion or function, AR at 331, strength was 5/5 with forward flexion and extension of both knees, with no reduction in muscle strength, AR at 334, and there was no knee joint instability bilaterally.  AR at 336-37.  The ALJ also considered a May 6, 2016 consultative examination by Dr.

Schwab, AR at 26 (citing AR at 447-52), who found Plaintiff was in no acute distress, could walk on heels and toes without difficulty, had a wide-based gait, could squat to 60%, used no assistive devices, needed no helping getting on or off the examination table and could rise from a chair without difficulty. AR at 448. Musculoskeletal examination was completely unremarkable with Plaintiff showing full range of motion throughout his spine and in all joints including, as relevant to this case, both knees. AR at 449. Deep tendon reflexes were physiologic and equal in upper and lower extremities, no sensory deficits were noted, and strength was 5/5 in upper and lower extremities. AR at 449. Dr. Schwab reported X-rays of Plaintiff's knees were unremarkable and X-rays of Plaintiff's back showed some straightening. AR at 450. Dr. Schwab diagnosed Plaintiff with backache, knee strain, COPD, migraine headaches, autoimmune disease by history, and paralyzed right diaphragm phrenic nerve, assessing Plaintiff with a fair prognosis and recommending Plaintiff avoid exertion. AR at 450. Further, in performed a consultative assessment of Plaintiff's RFC on April 12, 2018, Dr. McCormack observed that X-rays of Plaintiff's knees taken April 13, 2016 were unremarkable, as were X-rays of Plaintiff's spine that showed only minor straightening. AR at 1209.

As for Plaintiff's lung impairment, following the September 19, 2016 plication procedure, Plaintiff reported his breathing had improved. AR at 593 (Dec. 1, 2017 – Plaintiff's breathing improved with plication procedure); 731 (Nov. 10, 2016 – Plaintiff denied shortness of breath noting his breathing improved after surgery); 735 (Nov. 9, 2016 – Plaintiff denied shortness of breath and was found to be "doing very well" subsequent to plication procedure); 750 (Sept. 24, 2016 – Plaintiff doing well following

plication procedure). In his April 12, 2018, consultative assessment of Plaintiff's RFC, Dr. McCormack diagnosed Plaintiff with restrictive lung disease and right phrenic nerve palsy, assessing such impairments were severe as of Plaintiff's disability benefits application date. AR at 1209-17. Dr. McCormack assessed Plaintiff with the RFC to frequently lift and carry up to 10 lbs., occasionally lift and carry up to 20 lbs., stand or walk, and sit for up to six hours in an 8-hour workday with normal breaks, was unlimited with regard to pushing and pulling other than consistent with lifting and carrying restrictions, could frequently climb ramps, stairs, ladders, scaffolds, and ropes, frequently balance, stoop, kneel, crouch and crawl, had no manipulative, visual, or communicative limitations, and environmental limitations included avoiding concentrated exposure to extreme heat, extreme cold, humidity, fumes, odors, dusts, gases, and poor ventilation. AR at 1209-17. The ALJ gave Dr. McCormack's opinion significant weight based on Dr. McCormack's review of the clinical evidence in the record, observing that the opinion was consistent with such evidence and was consistent with an RFC for light work. AR at 27. Nevertheless, because the ALJ found Plaintiff's spinal and knee impairments were severe, the ALJ factored into the RFC assessment the effects of such impairments. AR at 27.

Accordingly, a thorough review of the administrative record reveals the ALJ's assessment of Plaintiff's RFC is supported by substantial evidence in the record.

**CONCLUSION**

Based on the foregoing, Plaintiff's Motion (Dkt. 7) is DENIED; Defendant's Motion (Dkt. 9) is GRANTED. The Clerk of Court is directed to close the file.

SO ORDERED.

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


DATED:	March 25th, 2020
	Buffalo, New York